**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ATTORNEYS LIABILITY
PROTECTION SOCIETY, INC., a
Risk Retention Group,
*Plaintiff-Appellant/*
*Cross-Appellee,*

v.

INGALDSON FITZGERALD, P.C.,
FKA Ingaldson, Maassen &
Fitzgerald, P.C.,
*Defendant-Appellee/*
*Cross-Appellant.*

Nos. 13-35115
13-35172

D.C. No.
3:11-cv-00187-SLG

OPINION

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, District Judge, Presiding

Argued August 14, 2014
Submitted June 10, 2016
Anchorage, Alaska

Filed September 23, 2016

Before: Jerome Farris, Dorothy W. Nelson,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Nelson

## SUMMARY[*]

### Diversity/Preemption

The panel reversed the district court's summary judgment order precluding plaintiff, Attorneys Liability Protection Society, from recovering defense fees and costs that it incurred in underlying litigation; and affirmed the district court's conclusion that the underlying claims were not covered by the insurance policy issued by plaintiff to a defendant law firm.

Plaintiff, a Risk Retention Group chartered in Montana, provided malpractice insurance coverage to the defendant law firm located in Alaska. The district court concluded that even though plaintiff's policy did not cover the claims in the underlying suit involving the law firm, plaintiff was not entitled to reimbursement of the expenses it incurred in providing a defense because the insurance policy's reimbursement provision did not comply with Alaska insurance law and was therefore unenforceable.

The panel held that Alaska Statute § 21.96.100(d)'s prohibition on reimbursements of fees and costs incurred by an insurer defending a non-covered claim was preempted by the Liability Risk Retention Act of 1986, 15 U.S.C. §§ 3901-3906. The panel determined that the Alaska statute placed a restriction on Alaska contracts that was not contemplated by the Liability Risk Retention Act, and that was not precluded

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

by all other states. The panel further determined that no exception applied to save the Alaska law from preemption.

The panel rejected defendant's argument that plaintiff was estopped from denying coverage because it failed to attend settlement conferences. The panel determined that there was no indication that defendant was prejudiced by plaintiff's failure to attend settlement sessions. Moreover, plaintiff informed defendant from the outset that it intended to assert coverage defenses, provided independent counsel to defendant, and acted consistently with its view that coverage did not exist.

## COUNSEL

Kevin Hartzell (argued), Kutak Rock LLP, Omaha, Nebraska, for Plaintiff-Appellant/Cross-Appellee.

William H. Ingaldson (argued) and Jim M. Boardman, Ingaldson Fitzgerald P.C., Anchorage, Alaska, for Defendant-Appellee/Cross-Appellant.

## OPINION

NELSON, Circuit Judge:

Attorneys Liability Protection Society (ALPS) appeals from the district court's grant of summary judgment to Ingaldson Fitzgerald, P.C. (Ingaldson), which denied ALPS reimbursement of defense fees expended in an underlying insurance litigation. Ingaldson cross-appeals the district court's grant of summary judgment to ALPS that the claims

asserted in the underlying litigation were not covered by the policy ALPS issued to Ingaldson. We **REVERSE** the district court's order denying ALPS reimbursement of defense fees, **AFFIRM** the district court's conclusion that the underlying claims were not covered, and **REMAND** for proceedings consistent with this opinion.

*FACTUAL BACKGROUND & PROCEDURAL HISTORY*

The facts underlying this litigation are not disputed. ALPS is a Risk Retention Group (RRG)[1] chartered in Montana. Ingaldson is a law firm located in Alaska. ALPS provided Ingaldson's malpractice insurance coverage from April 29, 2007, to April 29, 2008.

Ingaldson's policy with ALPS insured the firm against claims arising from "an act, error or omission in professional services that were or should have been rendered by [Ingaldson]." The policy expressly excluded from coverage any claims arising from conversion or disputes over fees. The policy also required Ingaldson to reimburse ALPS for fees and costs that ALPS incurred in defending non-covered claims.

In 2008, the bankruptcy trustee for the bankrupt estate of a former client of Ingaldson, in conjunction with another former client of the firm, brought a claim against Ingaldson in the U.S. Bankruptcy Court for the District of Alaska. The

---

[1] Under the Liability Risk Retention Act of 1986 (LRRA), 15 U.S.C. §§ 3901–3906, an RRG is defined as "any corporation or other limited liability association . . . whose primary activity consists of assuming, and spreading all, or any portion, of the liability exposure of its group members." 15 U.S.C. § 3901(a)(4)(A).

suit concerned Ingaldson disbursing from and withdrawing fees and costs against a $150,000 retainer. The former client and the trustee sought recovery of that retainer, and asserted claims against Ingaldson for, among other things, restitution, disgorgement, and conversion.

Ingaldson notified ALPS of the underlying suit. ALPS accepted Ingaldson's tender of the defense in the underlying suit, but did so with the caveat that ALPS "reserved 'all rights.'" ALPS explained that the underlying suit alleged activities that "d[id] not appear to implicate the provision of service or activities by [Ingaldson] as an attorney in an attorney-client relationship," and thus "d[id] not appear to be professional services within the Policy's coverage." ALPS also asserted that the claims in the underlying suit sought restitution that was not within the policy's definition of covered "damages" and that the policy did not cover claims related to disputes over fees, dishonest or criminal acts, or the conversion of funds in client trust accounts. ALPS specifically reserved the right to reimbursement for the portion of fees incurred in the defense of claims that were deemed not covered under the policy.

Ingaldson retained independent counsel to defend it in the bankruptcy litigation, and ALPS paid the fees charged by that counsel. The bankruptcy court twice granted partial summary judgment against Ingaldson.

On September 23, 2011, ALPS filed an action in federal district court seeking a declaration that the ALPS policy did not cover the claims against Ingaldson and that ALPS had no obligation under the policy to provide an appeal bond in the underlying suit. ALPS also sought to recover the expenses it incurred providing a defense to Ingaldson.

The district court determined that the policy did not cover the claims in the underlying suit. It also concluded that ALPS had no obligation to provide an appeal bond. Nevertheless, the district court determined that ALPS was not entitled to reimbursement of the expenses it incurred defending Ingaldson in the underlying suit. The district court reasoned that while the policy provided ALPS with a right to reimbursement, the reimbursement provision did not comply with Alaska insurance law and was therefore unenforceable. Specifically, the district court concluded that the reimbursement provision was inconsistent with Alaska Statute § 21.96.100(d), which provides that in furnishing the insured with independent counsel, an insurer "shall be responsible only for the fees and costs to defend those allegations for which the insurer either reserves its position as to coverage or accepts coverage." The district court determined that "Alaska law prohibits the inclusion of a right to reimbursement in insurance policies in the state and does not allow ALPS to provide insurance policy coverage that contradicts that prohibition." The district court rejected ALPS's argument that the LRRA preempted Alaska Statute 21.96.100(d).[2]

ALPS appealed. It argued that the district court erred for three reasons: (1) Alaska law does not prohibit an insurer from enforcing a contractual right to reimbursement of defense costs for noncovered claims; (2) the underlying suit

___

[2] The LRRA broadly preempts "any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would . . . make unlawful, or regulate, directly or indirectly, the operation of a risk retention group." 15 U.S.C. § 3902(a)(1). The district court held—erroneously in our view as discussed *infra*—that the exception contained in § 3905(c) saved Alaska Statute § 21.96.100(d) from preemption.

was never potentially covered by the ALPS policy; and (3) an interpretation of Alaska Statute § 21.96.100 that prohibited an insurer from including a reimbursement provision in an insurance policy would be preempted by the LRRA.

Ingaldson cross-appealed the district court's ruling that the ALPS policy did not cover the claims against Ingaldson in the underlying suit. Ingaldson argued that ALPS is estopped from denying coverage under Alaska law because it did not attend settlement sessions and therefore breached the covenant of good faith and fair dealing.

We certified two questions concerning interpretation of Alaska law to the Alaska Supreme Court. Specifically, we asked the Alaska Supreme Court:

1. Does Alaska law prohibit enforcement of a policy provision entitling an insurer to reimbursement of fees and costs incurred by the insurer defending claims under a reservation of rights, where (1) the insurer explicitly reserved the right to seek such reimbursement in its offer to tender a defense provided by independent counsel, (2) the insured accepted the defense subject to the reservation of rights, and (3) the claims are later determined to be excluded from coverage under the policy?

2. If the answer to Question 1 is "Yes," does Alaska law prohibit enforcement of a policy provision entitling an insurer to reimbursement of fees and costs incurred by the insurer defending claims under a

reservation of rights, where (1) the insurer explicitly reserved the right to seek such reimbursement in its offer to tender a defense provided by independent counsel, (2) the insured accepted the defense subject to the reservation of rights, and (3) it is later determined that the duty to defend never arose under the policy because there was no possibility of coverage?

The Alaska Supreme Court answered "yes" to each question, undermining the first and second bases for ALPS's appeal. *Attorneys Liab. Prot. Soc'y, Inc. v. Ingaldson Fitzgerald, P.C.*, 370 P.3d 1101, 1112 (Alaska 2016).

In this opinion, we address ALPS's third argument—that the LRRA preempts § 21.96.100(d). We also address Ingaldson's cross-appeal.

## JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## STANDARD OF REVIEW

We review the district court's orders granting summary judgment *de novo*. *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).

*ANALYSIS*

**1. The LRRA preempts Alaska Statute § 21.96.100(d)'s prohibition on reimbursement of fees and costs incurred by an insurer defending a non-covered claim.**

In ALPS's chartering state, Montana, insurers are permitted to seek reimbursement of fees expended defending a non-covered claim pursuant to a reservation of rights. *Travelers Cas. & Sur. Co. v. Ribi Immonochem Research, Inc.*, 108 P.3d 469, 480 (Mont. 2005). The district court held, and the Alaska Supreme Court confirmed, that Alaska Statute § 21.96.100(d) prohibits such reimbursements. We must decide whether the LRRA preempts Alaska's prohibition.

When considering whether the LRRA preempts a state law, we first determine whether the challenged aspect of the state law offends the LRRA's broad preemption language. *See Alliance of Nonprofits for Ins., Risk Retention Grp. v. Kipper*, 712 F.3d 1316, 1321 (9th Cir. 2013). If so, we consider whether one of the LRRA's exceptions, which are contained in §§ 3902(a)(1) and 3905, applies to save the state law. *See id.* If no exception applies, the law is preempted.

We conclude that § 21.96.100(d)'s prohibition on reimbursement of fees and costs incurred by an insurer defending a non-covered claim offends the LRRA's broad preemption language and that no exception applies to save the law.

The LRRA leaves regulation of an RRG to the state where the RRG is chartered, and broadly preempts "any [non-chartering] State law, rule, regulation, or order to the extent

that such law, rule, regulation, or order would . . . make unlawful, or regulate, directly or indirectly, the operation of a risk retention group." 15 U.S.C. § 3902(a)(1).

Section 21.96.100(d) places a restriction on Alaska contracts that is "not contemplated by the LRRA, and that is not [precluded] by all other states." *Wadsworth v. Allied Prof'ls Ins. Co.*, 748 F.3d 100, 108 (2d Cir. 2014). Although ALPS is permitted by its chartering state, Montana, to require reimbursement of fees and costs incurred defending non-covered claims, ALPS would not be permitted to include such a provision in a contract issued in Alaska. Section 21.96.100(d) therefore "regulates" ALPS's operations in Alaska and impermissibly conflicts with the LRRA.**[3]**

There is no exception that applies to save § 21.96.100(d) from preemption. The exceptions announced in § 3902(a)(1) concern unfair claim settlement laws, false practices laws, taxes levied against other insurers, registration requirements, and financial stability regulations. None of these permits the regulation of the substantive terms of policies issued by an RRG. The only substantive policy term a non-chartering state

---

**[3]** One of our sister circuits applied a similar analysis in finding a state statute preempted by the LRRA. In *Wadsworth*, the Second Circuit considered a New York statute that permitted a tort victim with an unsatisfied judgment to bring suit directly against a tortfeasor's insurer. 748 F.2d at 101. The policy at issue was issued by an RRG domiciled in Arizona to a chiropractor in New York. *Id.* A tort victim of the chiropractor sued the RRG to enforce a judgment left unsatisfied by the chiropractor. *Id.* at 102. The RRG argued that the direct-suit provision was preempted by the LRRA. *Id.* The Second Circuit agreed, concluding that the direct-suit provision was preempted by the LRRA because it conflicted with the "any regulation" language in § 3902(a)(1). *Id.* at 107 ("A clearer prohibition would be hard to devise.").

may require is a notice to the insured that RRGs are not subject to all of the insurance laws of the non-chartering state. *See* 15 U.S.C. § 3902(a)(1)(I).

We disagree with the district court's conclusion that § 3905(c) saves § 21.96.100(d) from preemption. Section 3905(c) prevents an RRG from providing insurance that is otherwise prohibited in the state where the policy is insured. It states:

> The terms of any insurance policy provided by a risk retention group or purchased by a purchasing group shall not provide or be construed to provide insurance policy coverage prohibited generally by [the] State . . . whose law applies to such policy.

15 U.S.C. § 3905(c). In our view, § 3905(c) allows non-chartering states to restrict the types of insurance coverage, such as for punitive damages or intentional conduct, that may be provided in the state. *See* H.R. Rep. 99-865, at 19 (1986) ("Possible examples include coverage for punitive damages, or for intentional, fraudulent, or criminal conduct."). It does not allow non-chartering states to regulate general policy terms. The district court's interpretation of § 3905(c) would permit that section to overtake § 3902's broad preemption scheme. If the district court's interpretation were correct, non-chartering states could simply "prohibit" coverage that did not comply with every aspect of state insurance law. In other words, if we were to accept the district court's interpretation, non-chartering states could fashion their insurance laws in a way to ensure they fall into this exception, thereby always avoiding preemption. We do not believe Congress intended such a result. *Estate of Magnin v. Comm'r*

*of Internal Revenue*, 184 F.3d 1074, 1078 (9th Cir. 1999) ("We must interpret [a] statute to give effect to all of its parts.").**⁴**

### 2.  **ALPS did not breach the implied covenant of good faith and fair dealing.**

In its cross-appeal, Ingaldson argues that ALPS is estopped from denying coverage because ALPS failed to attend settlement conferences.  According to Ingaldson, ALPS thereby breached the implied covenant of good faith and fair dealing.  We disagree.

Under Alaska law, estoppel has four elements: "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."  *O'Neill Investigations, Inc. v Ill. Emp'rs. Ins. of Wausau*, 636 P.2d 1170, 1178 (Alaska 1981) (internal quotation marks omitted).

---

**⁴** We reject Ingaldson's circular argument that its policy with ALPS has a clause expressly conforming it to Alaska law, thereby incorporating § 21.96.100 even if it is otherwise preempted.  Alaska law applies only insofar as it is not preempted by federal law.  So even if the policy conforms to Alaska law, Alaska law must conform to the LRRA.  The policy's clause providing for reimbursement of fees and costs to ALPS remains valid.

We also reject Ingaldson's argument that the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–12, saves § 21.96.100(d).  We have squarely held that even though the McCarran-Ferguson Act reserves insurance regulation to the states, the LRRA was meant to be an exception for RRGs. *Nat'l Warranty Ins. Co. RRG v. Greenfield*, 214 F.3d 1073, 1077 (9th Cir. 2000).

In the insurance context, most cases turn on the last element—whether the insured was prejudiced by the insurer's conduct. Generally, prejudice to an insured occurs when an insurer obtains an unfair advantage by misleading, deceiving, or withholding information from the insured. *See, e.g.*, *Progressive Cas. Ins. Co. v. Skin*, 211 P.3d 1093, 1103 (Alaska 2009) (finding possible estoppel of excluded driver defense when insurer contacted insured to ask which family members were excluded from policy without sharing purpose of inquiry); *Lloyd's & Inst. of London Underwriting Cos. v. Fulton*, 2 P.3d 1199, 1207–08 (Alaska 2000) (finding estoppel where insurer gained full access to insured, investigated a later-asserted coverage defense, and never informed insured of right to independent counsel).

Here, there is no indication that Ingaldson was prejudiced by ALPS's failure to attend settlement sessions. ALPS informed Ingaldson from the outset that it intended to assert coverage defenses, provided independent counsel to Ingaldson, and acted consistently with its view that coverage did not exist. *Cf. Sauer v. Home Indem. Co.*, 841 P.2d 176, 182 (Alaska 1992) (finding estoppel where insurer failed to give reasonable notice of coverage defense). We reject Ingaldson's argument that ALPS is estopped from denying coverage.[5]

---

[5] We note that this is not a case where ALPS could have tendered a settlement to the policy limit, thereby avoiding an excess judgment against Ingaldson. At no time did the amount in controversy in the underlying dispute approach the policy's $2 million limit. *See Jackson v. Am. Equity Ins. Co.*, 90 P.3d 136, 142 (Alaska 2004) ("When a plaintiff makes a policy limits demand, the covenant of good faith and fair dealing places a duty on an insurer to tender maximum policy limits to settle a plaintiff's demand *when there is a substantial likelihood of an excess verdict against the insured*.") (emphasis added).

*CONCLUSION*

We **REVERSE** the district court's order precluding ALPS from recovering fees and costs incurred defending Ingaldson in the underlying dispute, we **AFFIRM** the district court's holding that the claims in the underlying dispute were not covered under the policy, and **REMAND** for further proceedings consistent with this opinion.